## ALEXANDER POWICHROWSKI et al.

*vs.*

## FRANCISZEK SICINSKI et al.

*Specific Performance—Suit by Vendor—Evidence— Injunction.*

A party seeking specific performance must come promptly into court, and as soon as the nature of the case will permit.

p. 383

Specific performance is a matter, not of absolute right, but of sound discretion in the court, to be exercised upon consideration of all the circumstances of the particular case.

p. 383

In a proceeding by a vendor for specific performance, it is error to interfere by injunction with the disposition by defendant of property in no way involved with the contract involved in the proceeding. p. 384

*Decided June 29th, 1921.*

Appeal from the Circuit Court No. 2 of Baltimore City (STUMP, J.).

Bill by Franciszek Sicinski and Amelia Sicinski, his wife, against Alexander Powichrowski and Agata Powichrowski, his wife. From a decree for plaintiffs, defendants appeal. Reversed.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, STOCKBRIDGE, ADKINS, and OFFUTT, JJ.

*David Ash,* with whom was *Charles Jackson* on the brief, for the appellants.

*Frank G. Turner,* for the appellees.

ADKINS, J., delivered the opinion of the Court.

This is a suit to enforce specific performance of a contract to purchase a store building, fixtures and stock of goods.

The bill was filed by appellees on July 20th, 1920. It alleges the execution of the contract filed as an exhibit, and that at the time of the execution thereof appellants paid five hundred dollars on account of the purchase money, as set out in the contract, and that, immediately upon the execution thereof possession was delivered to appellants of the property, business, stock of goods, etc., referred to in said contract; and that appellants retained possession thereof and conducted a retail grocery business, such as had previously been conducted by appellees in said property, disposing of certain goods and replacing certain portions of the stock sold; that appellees made arrangements to comply with their part of the contract and appellants were notified of the time and place when and where title would be conveyed to them; that notwithstanding appellees have been and now are ready and willing to convey the property mentioned in the contract, upon appellants complying with the terms of said contract, appellants have refused and have declared their intention not to comply with said contract; that, upon appellants abandoning said property, appellees, realizing the value of a grocery business being actively conducted, concluded to operate said business for and on behalf of appellants until such time as they would carry out their contract of purchase, the said determination being communicated to appellants, and as no objection was raised thereto, appellees have continued to conduct said business for and on behalf of appellants; that appellants own two pieces of real estate in Baltimore City, Nos. 2443 and 2502 Fleet Street, which said properties, appellees believe, are the only assets appellants are possessed of.

Prayer of bill is: (1) That contract may be specifically enforced. (2) That a receiver may be appointed to take charge of the property mentioned in the contract and the business therein conducted, and to hold said property and con-

duct said business pursuant to further orders of court for the benefit of the parties to this cause as their respective rights thereto may hereafter be determined.   (3) That appellants may be restrained and enjoined from disposing of, or encumbering or otherwise dealing with the said properties belonging to them or either of them on Fleet Street until the further order of court.   (4) For further relief.

The contract, filed with the bill as an exhibit, is as follows:

"This Agreement, Made this 19th day of March, nineteen hundred and twenty, between Franciszek Sicinski, Emilia Sicinski, his wife, of Baltimore City, State of Maryland, of the first part, Alexander Powichrowski, of the same place, of the second part:

"Witnesseth, That the said parties of the first part do hereby bargain and sell unto the said party of the second part, and the latter doth hereby purchase from the former the following described property, situate and lying in Baltimore City, known as 2520 Foster Avenue, subject to an annual ground rent of thirty-seven dollars and fifty cents, dwelling, store fixtures, stock, shelving and everything belonging to grocery business, at and for the price of six thousand, five hundred dollars, of which five hundred dollars have been paid prior to the signing hereof, and the balance is to be paid as follows:   In cash within thirty days from date.

"And upon payment as above of the unpaid purchase money, a deed for the property shall be executed at the vendee's expense by the vendor, which shall convey the property by a good and merchantable title to the vendee.

"Taxes, etc., to be paid or allowed for by the vendor to day of settlement.

"Witness our hands and seals.
"F. Sicinski.
"Emilia Sicinski.
"Alex. Powichrowski.
"Agata Powichrowski."

The answer, filed August 9th, 1920, admits the execution of the contract and the cash payment, and that appellants took possession of the property and conducted business therein upon the signing of the contract; that they sold certain goods, but avers that they bought other goods largely in excess of goods sold; denies notification of appellants by appellees of the time and place, when and where title would be conveyed, or willingness of appellees to make such conveyance; denies that appellees were ready to convey and that appellents refused to accept said property, and avers that appellees refused to convey said property to appellants, put them out of the premises, and retained the cash payment, and also goods and merchandise belonging to appellants to the amount of approximately three hundred dollars; admits that when appellees refused to consummate the contract of sale, appellants bought another retail grocery business and that they are now conducting same; denies that appellants abandoned the business mentioned in the contract, and avers that appellants do not know what appellees have been doing with it since they forced appellants to vacate the premises; avers that appellants have no objection to the court assuming jurisdiction of the property and business and conducting same by receivers for the benefit of all parties until the merits of the controversy are determined; admits that the properties 2443 and 2502 Fleet Street are the only assets possessed by appellants.

Receivers were appointed August 10th, 1920, and on their petition they were the same day authorized and directed to employ Franciszek Sicinski, one of the appellees, to conduct the business.

On October 25th, 1920, an order was passed enjoining appellants from selling, encumbering or giving away the Fleet Street properties.

It will not be necessary to review at great length the testimony in this case. Suffice it to say that, according to the testimony of Franciszek Sicinski, who alone testified in behalf of

appellees on that point, Alexander Powichrowski, one of the appellants, after conducting the business with the assistance of the witness and the wife of witness until Saturday, April 10th, at midnight of that day threw down the keys on the meat block, left the store and went out. "I said, 'Are you going to come tomrrow morning?' He said, 'I do not come no more.' He did not come Sunday. Monday at ten o'clock all the bread and cakes lay outside. I had to lock the store. I took the bread in, and at ten o'clock he came in. I said, 'What is the matter with you; did you sleep over or what?' He said, 'I am not going to bother with it. I paid for one small ham; I am going to take it.' He took the ham and I not see him any more."

The version of Alexander Powichrowski as to what took place on that day is as follows: "Q. Did he (Sicinski) clerk for you at any time in the store? A. Sometime in the morning he opened the door and said, how is business? and he goes. Q. Did he sell any goods for you during the time you were there? A. No, just the day he put me out. Q. What day did he put you out? A. Saturday, April 10th, quarter of five. Q. In the afternoon? A. In the morning. I just come and opened the store and he took his license. I said, 'I have to stay under your license before the settlement; after the settlement I can take license.' He said, 'No, you cannot sell them, I am going to arrest you.' He was going to call the policeman and I put a bar on the front store. He said, 'You cannot sell any more.' Then, two ladies in the store I tried to sell them and he said, 'You cannot sell,' you have no license. Q. When were you to have a settlement? A. I told him Thursday I would settle April 10th. Q. You told him Thursday before the settlement? A. Yes. Q. You told him Thursday, April 12th? A. No, April 8th, that I would settle April 10th. Q. He left you there then? A. Yes. Q. Did you mean it when you say you notified him on the 8th, that you would be ready to settle by the 12th of April? A. My time was April 19th, but I wanted to settle April 12th.

Q. Did you have the money to pay him? A. I paid down five hundred dollars. Q. Had you made any provision? A. No, sir; I paid all my bills. Q. You do not understand me. You paid him $500 down and on the 8th of April you said to him that you were ready to settle on the 12th? A. Yes. Q. Did you have any money to settle with? A. At the time, yes. I settle with my property on Fleet Street; he give me possession for thirty days. (There was some previous testimony of an attempt to sell the Fleet Street property before the injunction.) Q. Was that why you sold the property on Fleet Street? A. Yes, I sold that property. Q. Where are you now? A. I was living at 2443 Fleet Street. Q. Doing business there? A. Yes. Q. Did you buy that place? A. Yes, sir. Q. When? A. I made a contract May 10th. Q. When did you take possession of it? A. I took possession May 10th."

Florian Ridzzynski testified that on Saturday, April 10th, there was some disturbance there; witness jumped out in the street at five o'clock in the morning, and then all of a sudden the lights went out in the store.

Joseph Naltalski testified that on April 10, 1920, he was a tenant in this building, living over the store; witness heard the wife of Sicinski complain and cry about having sold the place, that she liked it and did not want it sold; heard him say to his wife, "Don't cry, don't bother, we are still going to keep hold of this place"; that Sicinski was still in the habit of keeping butter and cigarettes upstairs and selling it to customers; "the Friday prior to the Saturday before the whole thing was finished he said tomorrow is the day on which I will put the fellow out and I will finish the whole business."

Mrs. Amelia Nalstalski testified that she boarded at Sicinski's at the time in question; that she heard Mrs. Sicinski carry on and cry about the sale of the store; she did not want it sold and Mrs. Sicinski on one occasion told witness that she was in hopes of getting the store back; that on April 10th, in the evening, witness "heard Mr. Sicinski say to the defend-

ant that he was not going to give him the book to collect money on."

Mrs. Powichrowski testified that Sicinski came to her house after he chased her husband out of the store. "He said: 'Well, I will know what I do; I chased you out of the store, but you can come over again and sell your meat, because you got your meat.' He says, 'You can come and sell it.' My husband did not want to go. He says, 'Well, I will go anyway and see what you do again.' So, my husband went to the store. I said, all right, you gave half of that money— what you call it? Q. The forfeit? A. The forfeit. I said you gave half, you make such a shame of my husband, so you give just half of that money, and we were going to give it back. He got up and said, 'No, I am not going to give you half of that money'; he says, 'After I sell this property I will give you some.'"

Sicinski, in rebuttal, denied that he chased Powichrowski out of the store. In reference to what happened at Powichrowski's house, witness said, "I taken the license off of him; he come to the store, he said I will go get the license and come back, and in one hour he went out and come back and attend to his business—that was in the morning, Saturday. Q. Were you in her house pleading? A. I was up there to see what was the matter—he closed the store—and said, 'what is the matter?' I said, 'Please come and attend to the business. If you do not, I am going to sue you for the damage what you are doing and then he come back and attend to business.'"

Witness denied his wife cried because the store was sold, but said she cried because Powichrowski cursed him; denied that he said he would not give him the books; denied that he sold butter and cigarettes upstairs; denied that he said in the presence of the witness, Nalstalski, that he was going to put Powichrowski out.

It will be noted that Sicinski is not corroborated in any particular by a single witness, as to his version of the occur-

rence on April 10th.  The absence of Mrs. Sicinski, one of the appellees, is significant.  It will also be noted that there is not a particle of evidence that the taking possession of the store and running it for three months before the filing of the bill in this case (for the benefit of appellants, as Sicinski claims) was done with the approval of appellants or either of them, or that Sicinski ever told either of them he was running it for them, although the bill so alleges.

Nor is there any contradiction of Powichrowski's testimony that, on April 8th, he told Sicinski he would be ready to pay the balance of the purchase money on April 12th.  If it can be said that anything done by Powichrowski relieved appellees as to him of the necessity of tendering performance of their part of the contract and demanding performance by appellants, before bringing a suit of this character, there is no testimony that such a condition existed as to Mrs. Powichrowski, who is also a party to the contract and a defendant in this case.

For three months, appellees had sole possession of the property and ran the business as their own, before filing the bill of complaint.  After so long a time there may not have been left a single article of merchandise which was included in the contract of sale.

"Specific performance is relief which this Court will not give, unless in cases where the parties seeking it come promptly, and as soon as the nature of the case will permit." *Penn v. McCullough,* 76 Md., at p. 232.

It goes without saying that specific performance should not be decreed after the contract has become incapable of being performed.  See *Shriver* v. *Seiss,* 49 Md., at p. 388.

"Specific execution of contracts by courts of equity is not a matter of absolute right in the party applying, but of sound discretion in the court, to be exercised upon consideration of all the circumstances of each particular case.  The court will be controlled, of course, in the exercise of its discretion, by the established doctrines and settled principles upon the sub-

ject; but it does not follow, as a matter of course, that because the legal obligation under the contract may be perfect, therefore the equitable power of the court will be exercised to compel or effect specific execution. In every case the question is whether the exercise of the power is called for to subserve the ends of justice; and unless the court is satisfied that the application to it for this extraordinary assistance is fair, just and reasonable *in every respect,* it will refuse to interfere, and leave the party to other remedies for redress." *Semmes* v. *Worthington,* 38 Md. at p. 325; *Rickard* v. *Neff,* 130 Md. 89.

Under the principles announced in these and in many other cases, appellees did not make out such a case as to entitle them to a decree for specific performance.

And even if such a decree could have been properly passed, it would have been error, in a proceeding of this sort, and while the proceedings were pending, to interfere by injunction with the disposition of property in no way connected with the contract involved in the proceeding. *Uhl* v. *Dillon,* 10 Md. 500; *Frederick County Bank* v. *Shafer,* 87 Md. 54; *Joyce* v. *Ragan,* 117 Md. 38.

> *Decree reversed, and bill dismissed, with costs to appellants.*