## RICHARD E. HARRIS ET UX. v. THE STEFANOWICZ CORPORATION

[No. 858, September Term, 1974.]

*Decided May 8, 1975.*

The cause was argued before ORTH, C. J., and GILBERT and LOWE, JJ.

*Wilson K. Barnes,* with whom was *Marvin H. Schein* on the brief, for appellants.

*James J. Dawson,* with whom were *Morton A. Sacks* and *Cable, McDaniel, Bowie & Bond* on the brief, for appellee.

LOWE, J., delivered the opinion of the Court.

Our knowledge of the facts is limited, as was the chancellor's, to what we learn from the pleadings in this case.

Mr. and Mrs. Richard Harris, appellants, (Harris) contracted with the Stefanowicz . Corporation, appellee (Corporation) to purchase a certain lot to be improved by a designated dwelling. Settlement was to take place within 10 days after completion of the improvements and was "expected to be on or before June 30, 1972," less than 5 months after the contract date. Harris deposited $3,000.00 with the Corporation.

The contract contained a cancellation or default clause which the chancellor depicted as "being the type of clause that no prudent buyer should allow to be in a contract. . . ." Its very presence caused the chancellor to "confess a certain feeling of sympathy toward the buyer in this case." The clause read:

> "(8) Should Buyers cancel or default hereunder for any reason all monies paid by Buyers including the cost of all change orders, will remain the property of the Seller and Seller shall be entitled to recover from Buyers all damages sustained as a consequence of such cancellation or default in excess of said monies. Should Seller cancel or default hereunder for any reason all monies paid by Buyers shall be returned by Seller, with no further liability on the part of one to the other."

Because appellee had made no effort even to commence construction well beyond the settlement date, and indeed had removed the top soil to be used elsewhere, appellants attempted first, to negotiate, then, being met with silence, to cancel the contract because of appellee's breach. The cancellation was in the form of a letter dated May 16, 1972.

Receiving no reply, appellants sued for specific performance and other relief on September 11, 1972. Their Bill elicited an Answer (although belatedly filed). Apparently, it also persuaded appellee to begin communicating.

On November 9, 1972 the Corporation's counsel wrote Harris, ignoring the prior cancellation letter, and informed Harris that the "Stefanowicz Corporation has decided to cancel. . . ." It enclosed a check for $3,000.00, pointed out its escape clause in paragraph 8, and offered an additional $1,000.00 conditioned upon dismissal of the pending suit. Presumably too little and too late (suit having been filed), the check was returned and the offer declined. Sometime in December, 1973, appellee commenced construction, a year and a half after the "expected settlement date." The Corporation then sought and received leave to amend its Answer. It also supplemented its Interrogatories. To its original answer it added a paragraph:

"15. That further answering said Complaint, Defendant avers that

(a) Plaintiffs breached the contract between the parties when, on July 7, 1972, they communicated with Defendant through their authorized agent and attorney a demand for refund of their $3,000.00 deposit, which demand was not authorized by either the contract or by law. A copy of said demand letter is attached hereto and made a part hereof as Answer Exhibit No. 1;

(b) Plaintiffs cancelled the subject contract by letter dated July 7, 1972, copy of which is attached hereto and made a part hereof as Answer Exhibit No. 2; and

(c) Notwithstanding said breach and cancellation, Defendant is presently constructing on the subject premises a Queen Anne dwelling house in substantial accordance with the provisions of the Contract of Sale between the parties on February 3, 1972 and Defendant stands ready, willing and able to convey said premises, upon

completion, (approximately April 1, 1974) to the Plaintiffs at and for the contract price, with such adjustments therefrom as may be appropriate for minor variations from contract specifications."

Thereafter on two separate occ?  .: the case was set for trial, subpoenas issued and servea but no trial held — for what reasons the record does not reflect. Indeed the record reflects nothing more than what is recited here, other than discovery procedures including interrogatories, demands for admissions, etc.

Finally, trial was set for October the 3rd and 4th, 1974. Subpoenas were again issued and served, and on October 3, 1974 all parties and witnesses were present.

The record then leapfrogs to an Order dismissing the Bill of Complaint followed by a transcribed oral opinion which sheds some light on the chancellor's decision to dismiss and the vehicle he chose to reach that result. At no time was testimony taken or evidence introduced. The opinion reads, in part:

"THE COURT: As I have said, there has been no motion for a summary judgment or decree filed in this case so that the matter can not be disposed of under the summary judgment rules because that requires ten days' notice of a hearing, but the summary judgment rule provides that the judgment sought shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavit, if any, show there is no genuine dispute as to any material fact and the moving party is entitled to a judgment as a matter of law.

Now, Maryland Rule 502 says that,

'At any stage of the action, the court may, on application of any party or of its own motion if it shall appear that there is a question of law which it would be convenient to have decided before going further, direct such question to be

raised for the court's decision in such manner as the court may deem expedient. All such further proceedings as may be rendered unnecessary by the decision of such question shall upon the decision be stayed. Such proceedings as show the questions so decided and the decision thereon shall form a part of the record and be reviewable upon appeal after final judgment.'

Now, the complainant here is ready to prove damages as a result of the position he is now in, which damages would encompass a great deal of disputed testimony and I believe, therefore, that it is convenient to have the question of responsibility or liability determined before going further. As the Rule specifically permits, the Court does that here today of its own motion.

I have heard arguments of counsel on this question of liability and it seems to me that we are in the exact position as if the defendants had filed a motion for summary decree. The Court's use of Section 502 merely eliminates the requirement of ten days' notice before hearing on motion for summary judgment or summary decree and it seems clear to the Court that the pleading, the admission and, all of the exhibits filed and admissions lead to an inevitable and inescapable conclusion that the complainants, Mr. and Mrs. Harris, can not recover, and this Court doesn't believe there's any dispute as to any material fact, to wit, facts that deal with the issue of liability. There are areas of dispute as to just what transpired between these parties, but, it is the opinion of the Court that they are not material."

— The ende good, doeth not by and by make the meanes good —

The Chancellor used Rule 502 to bypass the procedure required in Rule 610, summary judgment, saying that "The

Court's use of Section 502 merely eliminates the requirement of ten days' notice before hearing on motion for summary judgment or summary decree. . . ." Notwithstanding the hybrid development of Rule 502, it is as different from summary judgment in purpose and effect as is an apple from an orange. It is inconceivable that the Court of Appeals intended to permit a chancellor, on his own motion, to dispose of a case without hearing evidence, when the decision required him to draw factual conclusions from allegations in pleadings, some of which were not even under oath. In the absence of affidavits, the conclusion effected by the chancellor here was more reminiscent of the old Hearing on Bill and Answer, than Summary Judgment which replaced it. However, neither of those procedures ever contemplated proceedings by a court's peremptory action initiated sua sponte. A Summary Judgment is initiated by motion of a party, Md. Rule 610 a; while the initiator of a final hearing on bill and answer had to be by the plaintiff, *Somerville v. Marbury*, 7 G & J 275, 281; Miller, *Equity Procedure*, §§ 255, 256.

The purpose of the Summary Judgment procedure is to dispose of cases where there is no genuine factual controversy. The dispute here involved: first, appellants' claim that appellee breached; and second, appellee's claim that appellants breached and/or cancelled the contract, while it continued ready, willing and able to perform. Although each issue raised involved factual questions and could have required application of a different remedy, the chancellor decided in essence, that paragraph 8 of the contract limited appellants to what he regarded as an adequate remedy at law, an issue ordinarily raised and decided on demurrer.[1]

---

1. The chancellor, whose hypothesis was not unreasonable, said:

"No matter from whose point of view you look at this case the result comes out the same as far as the claim that is asserted in this bill of complaint is concerned because you either have a cancellation of the contract by the buyer under the letter of July the 7th and, having canceled, the buyer would not be entitled to sue for breach or, if it's the seller who has canceled or breached he has legally and effectively limited his liability to the return of the deposit. Having tendered the same he has discharged his liability."

When there is no demurrer or motion for summary decree, but there is an issue the court considers convenient to decide before going further, it may choose to invoke Rule 502. The authority given is limited, however. The rule states that "the court may . . . direct such question to be *raised* for the court's decision in such manner as the court may deem expedient." [2] [Emphasis added].

In addition to court directive, the rule's operation may be triggered by application of a party or stipulation of the parties "in advance of a determination of the main issue." *Cf. Cambridge v. Eastern Shore Public Service Co.*, 192 Md. 333, 341, (giving as an example "by special case stated or otherwise.").

Md. Rule 502 is a patchwork of "lifted language" amalgamated from two nineteenth century statutes and given impetus by a third unrelated act.[3] It was meant to fuse an equity procedure with a legal one which had been originally designed to clear away preliminary or extraneous issues before trial. Although the editor's notes indicate no substantive change was intended by the rewriting of Art. 75, § 134 and Art. 16, § 237 as one rule, certain language which had been in the equity act (originally Acts of 1886, Ch. 334) was omitted to facilitate the revision. The omitted language included a phrase more clearly conveying the procedural safeguard to be followed when it appeared to the chancellor that there was a question of law that it would be convenient to decide. " . . . the Court may make an order accordingly, and may direct such question of law to be raised for the opinion of the Court."

---

**2.** If the court below complied with this portion of the rule, such compliance is indicated neither by record nor by the parties. The reference by the chancellor to "arguments of counsel on this question of liability" indicates counsel may have had some advance notice of the opinion that followed; however, the record otherwise gives us no indication that the opinion rendered came as anything but a complete surprise to both parties.

**3.** Subsection (b) of Md. Rule 502 contains language which permits the court to draw "all inferences of fact or law that the court or jury could have drawn from the facts agreed or shown as if the same had been offered in evidence upon a trial before the court or before the court and a jury." The editor's note to the Rule tells us that this "language was lifted from Article 26, § 16, 1951 Code, dealing with agreed statements of fact, special cases stated and special verdicts."

Properly invoked, the rule unquestionably enables a chancellor to decide a purely legal issue as a preliminary matter. In the usual case, application of the rule will result in a bifurcated proceeding, where resolution of certain legal questions precedes resolution of issues which must be tried. On the other hand, there are circumstances where invocation of Rule 502 will, upon resolution of the legal issue, conclude the case, *e.g.*, *Irvine v. Montgomery County*, 239 Md. 113, where grant of a Motion Raising Preliminary Objection on the basis of governmental immunity foreclosed further proceedings.[4] Significantly, however, in none of the cases relied upon by appellee was the decision rendered without some warning and opportunity to prepare whether it be in the form of an anticipatory question by either a party or parties, preliminary court directive, or acquiescence or stipulation at or during trial. The isolated instances when Rule 502 was utilized and that was not the case are unusual if not extraordinary. In *Scheihing v. B. & O. R. R. Co.*, 180 Md. 168, the 502 procedure was followed by the court because, after twice being called to trial and found unprepared, the plaintiff on the third occasion was "not able to make a satisfactory offer of proof. . . ." The Court of Appeals said, that under the circumstances "[she] can hardly be heard to complain that she has not had her day in court." In discussing the procedure which was then found in Md. Code 1939, Art. 16, § 226, the Court said:

> "Such a proceeding is not a demurrer but is intended to be rid of irrelevant questions which have no part in a controversy, so as to leave the decision to the point of the case." *Scheihing*, 180 Md. at 172.

---

4. Although the question of law was decided from the pleadings, the use of Rule 502 was justified by the Court of Appeals in Irvine on the principle that governmental immunity must be raised by motion before any pleading. Md. Rule 323 b. The Court said "The purpose of Rule 323 is to have a legal question, such as this, decided before trial of the action on its merits. . . . Compliance with procedural regulations is essential to the fair and efficient administration of justice, but it is the substance of compliance and the fair treatment of the parties, which are determinative." Irvine, 239 Md. at 117.

Notwithstanding its diverse origins and the recent inclusion of "language . . . lifted" from Article 26, § 16, Rule 502 was never meant to be a device for summarily dismissing cases. We now make explicit what was implicit in *Scheihing, viz.*, Rule 502 may not be used as a judicial demurrer nor as a chancellor's motion for a summary judgment.

In light of this result, we need not reach other questions raised.[5]

> *Decree dismissing bill of complaint reversed; case remanded for trial.*
> *Costs to be paid by appellee.*

---

5. While it is unnecessary to reach the issue as raised, we cannot help but wonder why the chancellor felt he did not have "jurisdiction" to order the return of the down payment in light of his finding:

"Now, it's quite obvious that the Court's ruling establishes the right as between these parties to the return of the deposit, but, I don't believe that the Court has any jurisdiction in this case to enter a judgment against Stefanowicz for the $3000, that would have to be a suit at law, but, it seems to me that the right to recover, that would be automatic upon the filing of suit. A motion for summary decree or summary judgment for the $3000 could be supported by assertion of a res judicata principle, but, I'll leave that for another day."