ERNEST H. HUPP ET UX. *v.* THE GEORGE R.
REMBOLD BUILDING COMPANY

[No. 134, September Term, 1976.]

*Decided March 4, 1977.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and ORTH, JJ.

*Joseph I. Huesman,* with whom was *R. Douglas Jones* on the brief, for appellants.

*Robert W. Warfield* for appellee.

SINGLEY, J., delivered the opinion of the Court.

Ernest H. Hupp and Mildred E. Hupp, his wife (the Hupps) entered an appeal to the Court of Special Appeals from an order and decree of the Circuit Court for Anne Arundel County dismissing their bill of complaint for specific performance of a contract which they had entered into with The George R. Rembold Building Company (Rembold) for the purchase of a house to be constructed by Rembold. We granted certiorari before the case came on for hearing in the Court of Special Appeals.

In December of 1973, the Hupps had entered into the contract for the purchase of a house at 761 North Mesa Road in a development known as Hillendale in Anne Arundel County. The house was to be identical with another house which had been built by Rembold in the same community, with certain modifications, not material to the issue before us, as agreed by the parties.

The purchase price was $42,500.00, of which $2,000.00 had been paid prior to the execution of the contract. At settlement, at which time possession was to be given, an additional $25,500.00 was to be paid in cash, and the balance was to be realized from a 20-year purchase money mortgage with interest at eight percent to be obtained by the Hupps.

The contract is otherwise unremarkable, except for the provisions of paragraph 7:

> "Should Buyers cancel or default hereunder for any reason all monies paid by Buyers, including the cost of all change orders, will remain the property of the Seller and Seller shall be entitled to recover from Buyers all damages sustained as a

consequence of such cancellation or default in excess of said monies. Should Seller cancel or default hereunder for any reason all monies paid by Buyers shall be returned by Seller, with no further liability on the part of one to the other." [1]

During the course of construction, which appears to have proceeded more slowly than the 120-day period stipulated by the contract, the Hupps advanced $2,910.34 for modifications and other extras not contemplated by the contract.

Rembold scheduled settlement for 28 June 1974. The Hupps failed to appear because Rembold had refused to meet with them at the house to review the work which had not been completed.[2] Rembold than called for settlement on 3 July, but rejected the Hupps' suggestion that $1,000.00 of the purchase price be escrowed pending completion of the work. When the Hupps declined to attend the settlement, Rembold wrote to the Hupps' counsel on 3 July, saying in part "I am invoking Para. (7) seven of a contract dated Dec. 5, 1973."

On 11 July 1974, Rembold entered into a contract for the sale of the house to another purchaser for $49,900.00.[3] The Hupps, by then, had filed their bill of complaint for specific performance on 10 July in the Circuit Court for Anne Arundel County.

Rembold demurred on the ground that the purchase contract violated the rule against perpetuities and was too

---

**1.** A contract containing the same provision was before the Circuit Court for Baltimore County and later before the Court of Special Appeals in Harris v. Stefanowicz Corp., 26 Md. App. 213, 214, 337 A. 2d 455, 456 (1975). In that case, the lower court commented that it was "the type of clause that no prudent buyer should allow to be in a contract. . . ." A decree dismissing an action for specific performance prior to an evidentiary hearing was reversed and the case was remanded for trial.

**2.** While there were 23 items on the Hupps' punchlist, the significant ones related to the manner in which kitchen cabinets had been installed, the failure to install a sump pump, and exterior grading. At trial the county building inspector said he regarded the house as being 95% complete, presumably in terms of building code requirements.

**3.** The contract with the new purchasers took the form of a lease, which could be converted into an agreement of purchase and sale, contingent upon Rembold's prevailing in this litigation.

uncertain and indefinite to be specifically enforced, and answered, denying that the work had not been properly performed and alleging that the house had been sold, in good faith, to others. The matter of the demurrer was referred to a Master in Chancery, whose report recommended that the demurrer be overruled. The court so ordered on 27 January 1975.

The case came on for hearing on the merits in July, 1975 and on 25 May 1976, the court entered its opinion and order, in which it concluded that Rembold had acted under the second sentence of paragraph 7 of the contract:

> "Should Seller cancel or default hereunder for any reason all monies paid by Buyers shall be returned by Seller, with no further liability on the part of one to the other."

and dismissed the bill of complaint.

Generally, the granting or withholding of a decree for specific performance lies within the discretion of the trial court, *Gross v. J & L Camping & Sports*, 270 Md. 539, 543-44, 312 A. 2d 270, 273 (1973), quoting from *The Glendale Corp. v. Crawford*, 207 Md. 148, 154, 114 A. 2d 33, 35 (1955):

> "This discretion is not, however, arbitrary; and where the contract is, in its nature and circumstances, unobjectionable — or, as it is sometimes stated, fair, reasonable and certain in all its terms — it is as much a matter of course for a court of equity to decree specific performance of it as it is for a court of law to award damages for its breach."

An overview of circumstances in which specific performance may be granted can be found in this Court's opinion in *Charles County Broadcasting v. Meares*, 270 Md. 321, 324-26, 311 A. 2d 27, 30-31 (1973):

> "The granting of specific performance rests within the sound discretion of the trial court, *Horst v. Kraft*, 247 Md. 455, 459, 231 A. 2d 674, 676 (1967); Restatement of Contracts § 359 (1) (1932). If a

contract is fair, reasonable and certain, specific performance may be granted almost as a matter of course, *Excel Co. v. Freeman*, 252 Md. 242, 246, 250 A. 2d 103, 106 (1969). This is true even if the contract is contingent, if the contingency can be met, *Scheffres v. Columbia Realty Co.*, 244 Md. 270, 284, 223 A. 2d 619, 626 (1966); within the time stated, *Paape v. Grimes*, 256 Md. 490, 499, 260 A. 2d 644, 649 (1970). *See generally Chapman v. Thomas*, 211 Md. 102, 126 A. 2d 579 (1956).

"While specific performance has been historically associated with contracts for sale of land, it has been invoked to enforce other contracts for at least a century, Simpson, *Fifty Years of American Equity*, 50 Harv. L. Rev. 171, 173 (1936). *See Board of County Comm'rs v. MacPhail*, 214 Md. 192, 133 A. 2d 96 (1957) (paving public road); *Wolbert v. Rief*, 194 Md. 642, 650-51, 71 A. 2d 761, 764-65 (1950) (sale of a business).

"It has long been established that if the remedy of specific performance is possible when the vendee brings suit, but while the action is pending, a vendor disables himself from performing his contract, damages may be awarded in lieu of specific performance, *Busey v. McCurley*, 61 Md. 436, 448 (1884); *Powell v. Young*, 45 Md. 494, 498 (1877); *Green v. Drummond*, 31 Md. 71, 84 (1869); *Rider v. Gray*, 10 Md. 282, 300 (1856); 1 Pomeroy, Equity Jurisprudence § 237f, at 443 (5th ed. 1941); Miller, Equity Procedure § 672 (1897); Pomeroy, Specific Performance of Contracts § 294, at 372 (2d ed. 1897). *See Kappelman v. Bowie*, 201 Md. 86, 90, 93 A. 2d 266, 268 (1952) ('equity may refuse . . . to . . . enforce a hard bargain').

"If a complainant files a bill for specific performance at a time when he knows specific performance is impossible, and the sole remaining prayer for relief is for damages, his bill will be dismissed, *Davis v. Winter*, 168 Md. 613, 618-19,

178 A. 604, 605-06 (1935). Although specific performance cannot be decreed once performance has been impossible, *Powichrowski v. Sicinski,* 139 Md. 376, 383, 114 A. 899, 901-02 (1921), damages may be awarded in the same equitable proceeding, Restatement of Contracts, *supra,* § 363 and illustration 1 at 657, provided that at the time the action was commenced in equity, specific performance was in fact obtainable, *Harris v. Harris,* 213 Md. 592, 597, 132 A. 2d 597, 600 (1957). *Compare Prucha v. Weiss,* 233 Md. 479, 485, 197 A. 2d 253, 256, *cert. denied,* 377 U. S. 992 (1964), where an equity court was held to be without jurisdiction to grant money damages when no independent grounds of equitable jurisdiction were present.

"If the object of the bill is to compel specific performance and there is a prayer for general relief, damages traditionally could be awarded under that prayer, *Powell v. Young, supra,* 45 Md. at 496-97; Miller, *supra,* § 673.

"The rule as to measure of damages is articulated in *Hartsock v. Mort,* 76 Md. 281, 288-89, 25 A. 303, 304 (1892), quoting, with minor editing, from *Hammond v. Hannin,* 21 Mich. 374, 387 (1870):

'If the vendor acts in bad faith, — as, if having title he refuses to convey, or disables himself from conveying, — the proper measure of damages is the value of the land at the time of the breach; the rule, in such case, being the same in relation to real as to personal property. But, on the other hand, if the contract of sale was made in good faith, and the vendor for any reason is unable to perform it, and is guilty of no fraud, the clear weight of authority is that the vendee is limited in his recovery to the consideration money (paid) and interest, with perhaps in

> addition, the costs of investigating the title.'

This is essentially the English rule, adopted by *Flureau v. Thornhill*, 96 Eng. Rep. 635 (1776). *See generally* McCormick, Law of Damages § 179 (1935).

> "Under *Hartsock v. Mort, supra,* we conceive good faith to be that ordinarily exhibited by a seller who is unable to perform through no fault or fraud of his own, while bad faith is that shown by a seller who refuses to perform when able to do so, *Horner v. Beasley*, 105 Md. 193, 198, 65 A. 820, 822 (1907)."

We are here called upon to construe a contract provision which may be analogized to an option, where specific performance might have been decreed against the optionor but not necessarily against the optionee, *Simpers v. Clark*, 239 Md. 395, 400-01, 211 A. 2d 753, 756 (1965); *Trotter v. Lewis*, 185 Md. 528, 534, 45 A. 2d 329, 332 (1946).[4] What makes this case unusual is that the purchaser can be likened to the optionor, and the seller, to the optionee. As a consequence, Rembold might have sought specific performance against the Hupps, had he fully performed, assuming that the first sentence of paragraph 7 of the contract is not to be regarded as a provision for liquidated damages in lieu of specific performance,[5] *see Armstrong v. Stiffler*, 189 Md. 630, 634-35, 56 A. 2d 808, 810 (1948); *Rogers v. Dorrance*, 140 Md. 419, 423-24, 117 A. 564, 566 (1922); 71 Am. Jur. 2d *Specific Performance* § 57, at 83-85 (1973).

When, as here, the parties enter into a contract which gave the seller the right to rescind for any reason, or perhaps even for no reason, specific performance cannot be

---

4. In cases involving options, the test of mutuality is usually met by regarding the parties as mutually bound once the option is exercised, or by regarding the undertaking as a conditional one which becomes mutual when the condition is met, *see* E. Miller, Equity Procedure §§ 685-86, at 791-94 (1897).

5. This surely must have been apparent to Mr. Hupp, who is a member of the Maryland bar.

decreed unless the seller against whom specific performance is sought fails to meet any condition precedent which must be complied with before his right to rescind can be invoked. Here, the condition was that ". . . all monies paid by Buyers shall be returned by Seller . . . ."

Because there is no evidence that Rembold made a timely proffer of the return of the sums advanced by the Hupps when he attempted to rescind the agreement by his letter of 3 July, the case must be remanded for an evidentiary hearing to determine whether Rembold made a timely proffer of the Hupps' deposit, together with all monies expended by them on the house. Should it be found that he did not, the Hupps should have been granted the relief which they sought.

> *Case remanded, without affirmance or reversal for further proceedings conformable to the views herein expressed; costs to abide the result.*