EVELYN *v.* RAVEN REALTY, INC.

[No. 107, September Term, 1957.]

468

*Decided February 25, 1958.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Thomas S. Knox* for the appellant.

*Arnold Fleischmann,* with whom were *A. Frederick Taylor* and *Smalkin, Hessian, Martin & Taylor* on the brief, for the appellee.

HORNEY, J., delivered the opinion of the Court.

From a decree of the Circuit Court for Anne Arundel County requiring the specific performance of a contract of sale between Dr. Reginald G. Evelyn, (the seller), and Joseph R. Spangle, (the intermediary), subsequently assigned to Raven Realty, Inc., (the buyer), the seller has appealed.

On December 16, 1955, the seller entered into an agreement to sell to the buyer a parcel of land in Anne Arundel County. The sale price was $700, of which $100 was paid when the contract was executed, leaving a balance of $600 to be paid within thirty days. The contract contained a clause to the effect that time was of the essence, and that failure to comply would constitute a forfeiture of the deposit. The intermediary, who was a real estate salesman acting as agent for the buyer, assigned the contract to the buyer on December 19, 1955, but inadvertently omitted the name of the assignee. No notice of the assignment was given to the seller. The buyer contends that on or about January 10, 1956, the intermediary, at the behest of Dennis P. Murphy,.

the president of Raven Realty, Inc., called the seller on the telephone, requested and was granted an extension of sixty days from January 16, 1956, within which to pay the balance of the purchase money. The result of the telephone call having been reported to the buyer, its president wrote a letter to the seller on January 10, 1956, confirming the extension. On the other hand the seller claims that he did not receive either the telephone call or the letter, and that he was never contacted by either the intermediary or the president of the buyer corporation in regard to an extension of time. He stated that the only telephone call he received concerning the property was from a lady about two months after the contract was executed. She did not identify herself and merely inquired if he owned the property in question and whether he was married. There was no conversation with her concerning an extension of the time of settlement. The seller further contends that the next communication he received with respect to the property was a letter dated March 2, 1956, from H. Richard Smalkin, attorney for the buyer, in which the date of March 7, 1956, was set to consummate the sale. Upon the receipt of this letter the seller had his attorney notify the attorney for the buyer that, because the purchaser had not abided by the contract, the seller had treated the deposit as forfeited. The buyer was able, ready and willing to consummate the sale on March 7, 1956, but there was no evidence as to whether it could have performed its contract on January 16, 1956, within the thirty-day period specified in the contract of sale.

This seemingly simple enumeration of facts poses a myriad of legal problems, among which are: (i) was the contract of sale assignable without notice to the seller?; (ii) was a consideration necessary to extend the time for payment?; (iii) was the telephone conversation relating to the extension agreement admissible?; (iv) was the letter confirming the extension agreement admissible?; (v) was the agreement to extend within the Statute of Frauds?; (vi) was there a waiver of the specified time for payment by the seller?; (vii) was the seller estopped from treating the deposit as forfeited?; and (viii) was the chancellor clearly wrong in deciding that

the buyer was entitled to specific performance of the contract of sale? Moreover, many of the questions posed concern an important element of the law of contract as to which there appears to be many inconsistencies, if not utter confusion. However, in Maryland the confusion appears to be less than in some of the other jurisdictions.

Even if it is assumed that the contract of sale was assignable, that no consideration was necessary to extend the time for payment, and that the telephone conversation relating to the extension agreement and the letter, or a copy of it, purporting to confirm the extension agreement, were admissible, the buyer was still not entitled to prevail.

We have consistently held that when an agreement, such as the contract of sale in this case, is required by the fourth section of the Statute of Frauds [1] to be in writing in order to be binding, and in which it is stipulated that time is of the essence, the statute makes oral evidence inadmissible to vary the original contract, but does not prevent the admission of oral evidence to show an *effectual* waiver or estoppel as to the time of performance. *Abrams v. Eckenrode,* 136 Md. 244, 110 A. 468 (1920); *Spellman v. Dundalk Co.,* 164 Md. 465, 165 A. 192 (1933); *Markoff v. Kreiner,* 180 Md. 150, 23 A. 2d 19 (1941); *Bank v. Hurst Estate,* 187 Md. 333, 50 A. 2d 133 (1946); *Garbis v. Weistock,* 187 Md. 549, 51 A. 2d 154 (1947); and *Born v. Stancills,* 214 Md. 443, 135 A. 2d 843 (1957).

Since there was no evidence of a *memorandum* in writing *signed* by the *seller* extending the time for payment beyond the time specified in the original contract of sale, the real question then is whether the seller waived the time requirement under the contract of sale or was estopped from claiming a default on the part of the buyer.

There is even confusion in the use of the terms "waiver"

---

1. The statute of 29 Car. II, Ch. 3, sec. 4, set forth in *Alexander's British Statutes,* p. 689 (Coe's ed. 1912), commonly known as the Statute of Frauds, provides, with respect to a contract for the sale of land, that no suit shall be brought unless the agreement on which the action is brought, or some *memorandum* or note thereof, *is signed by the party to be charged.*

and "estoppel". Many law writers and courts make no effort to distinguish them and use the terms interchangeably. A clarification may not be amiss. When a seller has promised to convey land on the express condition that payment of the purchase price must be made on or before a specified date, payment on time is the condition which a buyer must perform. But, if the seller merely states to the buyer that he does not insist on timely payment, he thereby eliminates the condition, and such statement constitutes a "waiver".[2] Being the seller's voluntary action, it is not necessary for the buyer to give any consideration for the waiver, or that the buyer change his position, in reliance thereon, in order for the waiver to be legally effective. If, however, the seller foresees or should have foreseen that the buyer would materially change his position in reliance on the waiver, and the buyer does so, then the seller is "estopped". The seller's action is still a "waiver", but the resulting action in reliance thereon by the buyer creates the "estoppel". Thus, "waiver" consists of the voluntary action of the seller alone, while an "estoppel" requires the action of both the seller and the buyer.[3]

Contrasting a waiver with the doctrine of equitable estoppel, Section 689 of 3 *Williston, Contracts,* (Rev. ed. 1936), states the proposition thus:

> "The same principle is applicable to other excuses for non-performance of a promise besides breach of conditions. Wherever the promisée has allowed a legal excuse to arise, relying upon express or implied statements of the promisor that the latter would not avail himself of the excuse, there is waiver. This is a principle distinct from the ordinary equitable estoppel, since the representation is promissory, not a misstatement of an existing fact. * * * To bring

---

2. The term "promissory estoppel" is often used synonymously with "waiver" as contrasted with the normal equitable estoppel.

3. For an exposition of the difference between a "waiver" and an "estoppel", see 3 *Corbin, Contracts,* Sec. 752; *Colbath v. H. B. Stebbins Lumber Co.,* 127 Me. 406, 144 A. 1 (1929); and *Northwestern National Life Ins. Co. v. Ward,* 56 Okla. 188, 155 P. 524 (1915).

> the case within the reason of the rule it is essential that the promisee could and would have performed the condition, or would not have allowed the defense to arise, had it not been for the promisor's waiver. For if the promisee could not have entitled himself to performance of the promise, even had there been no waiver, there is no equitable reason why the promisor should not take advantage of the breach of condition or other defense. He has promised that he would not, but his promise was not only wholly gratuitous, but has not been acted on."

This principle explains the holding in *Walter v. Bloede Co.,* 94 Md. 80, 50 A. 433 (1901), a case involving the breach of a contract for the sale of merchandise in which the same principle of law was present that we are principally concerned with here: that the buyer must have been able to perform his part of the contract to be performed within the time specified in the original contract of sale. See also *Spellman v. Dundalk Co., supra.* There is also a corollary to the theory previously stated to the effect that where the plaintiff procures the extension, he cannot later claim that the defendant's waiver entitled the plaintiff to specific performance. The latter theory is not always followed in other jurisdictions, but it is certainly one of the reasons for the decision in the *Walter* case, *supra,* and is the theory behind the rule stated in 2 *Williston, op. cit., supra,* Sec. 598:

> "Where the extension of time or other variation of the contract is requested by one party because of his inability to perform the contract according to its terms, or in any case where he would have been thus unable, an agreement by the other party permitting an extension or variation cannot be said to be the cause of the failure to perform the contract according to its original terms. Here, if the party guilty of non-performance of the original obligation is allowed to recover or is protected from liability on it because of his readiness and willingness to perform the extended or varied contract, he is relying merely

> on a voluntary permission or on an oral contract within the Statute. There is no equity forbidding the Statute to be set up under these circumstances."

This statement is not inconsistent with Williston's earlier statement in Section 595 to the effect that non-performance of a condition will be excused if "caused" by the defendant, and it certainly coincides with the first part of the statement in Section 689, *supra*. In other words, if the plaintiff could not have been able to perform the original contract within the original time limit, he cannot rely on the defendant's oral waiver.

In the case at bar the buyer seeks to use the waiver, which it sought and claims to have received, but it produced no evidence that the buyer could have performed within the thirty-day period specified in the original contract of sale. We have been referred to no case, nor have we found one granting the plaintiff a remedy (i) where it was the *plaintiff* who sought the waiver, (ii) where it was the *plaintiff* who was relying on the oral waiver, and (iii) where the *plaintiff* did not produce evidence showing that he could have performed within the original time limit. Yet all of these factors are present in the instant case as they were in the *Walter* case, *supra*.

There remains but one other problem to be considered: who has the duty of showing (or not showing) that the buyer could have performed the contract within the original time specified therein?

The authorities seem to agree that it is the duty of the plaintiff—the buyer in the case now before us—in the pleadings, as well as at the trial of the issue, to show that he could have performed on the date specified in the contract.

By its pleading the buyer should have alleged that it had performed or offered to perform, or explain its failure to perform or offer performance of the terms and conditions of the contract on its part to be performed prior to, or concurrent with, the performance required of the seller. 81 *C. J. S., Specific Performance*, Sec. 131; *Miller, Equity Procedure* (1897), Sec. 659. Also see *Horwitz v. Kreuzer*, 140 Md. 414, 117 A. 563 (1922). An examination of the bill

discloses that it is silent as to performance except, perhaps, by implication, and there is not a word as to the buyer's ability, readiness and willingness to perform on the date specified in the contract; but we are not primarily concerned with the pleadings here.

Likewise, at the trial of the issue, the buyer had the burden of showing that if the requested extension had been denied, it was willing, ready and able to perform its unperformed part of the contract. 81 *C. J. S., Specific Performance,* Sec. 140; 4 *Pomeroy, Equity Jurisprudence,* (5th ed. 1941), Sec. 1407. Also see *Walter v. Bloede Co., supra; DeCrette v. Bonaparte,* 139 Md. 252, 114 A. 880 (1921), and cases therein cited; and *Triton Realty Co. v. Frieman,* 210 Md. 252, 123 A. 2d 290 (1956), and cases therein cited; and see *Mansfield v. Redding,* 269 Pa. 357, 112 A. 437 (1921), and *Mitchell v. White,* 295 Ill. 135, 128 N. E. 803 (1920). In the case at bar the buyer failed to prove that it could have performed on or before January 16, 1956. Instead it insisted on proving that it was able, ready and willing to perform on March 7, 1956.

We think it is clear that the bill for specific performance should have been dismissed on the evidence as well as the law.

Obviously, it is not necessary for us to consider the other questions posed by the facts. The other questions of law presented by the briefs, not herein considered, were either abandoned at the argument, or it is not necessary now to consider them further.

> *Decree reversed, and bill*
> *dismissed, the appellee*
> *to pay the costs.*