## THE STEFANOWICZ CORPORATION *v.* RICHARD E. HARRIS ET UX.

[No. 942, September Term, 1976.]

*Decided May 16, 1977.*

The cause was argued before THOMPSON, DAVIDSON and MASON, JJ.

*William J. Rubin,* with whom were *James J. Dawson* and *Cable, McDaniel, Bowie & Bond* on the brief, for appellant-cross/appellee.

*Wilson K. Barnes,* with whom was *Marvin H. Schein* on the brief, for appellees-cross/appellants.

THOMPSON, J., delivered the opinion of the Court.

When this case originally came for trial in the Circuit Court for Baltimore County the bill of complaint was summarily dismissed. On appeal this Court reversed because

of the erroneous summary nature of the procedure. We did not reach the merits of the case. *See Harris v. Stefanowicz Corp.*, 26 Md. App. 213, 337 A. 2d 455 (1975). After a second trial in the Circuit Court for Baltimore County, a decree awarding $63,615.00 was entered in favor of the appellees and cross-appellants, Richard E. Harris, et ux. The Stefanowicz Corporation, the appellant, presents a multi-faceted attack on that decree.

On February 23, 1972, the appellees, Richard E. Harris and Joan Harris, his wife, entered into a contract to purchase from the appellant, The Stenfanowicz Corporation, a "Queen Anne" model dwelling house to be constructed on Lot 21, Block R in Stefanowicz's Ravenview (Spring Lake) Development in Baltimore County. The "Queen Anne" was described as "now existing on Lot 15, Block M in said development." According to the contract, the lot was valued at $15,000, the house at $39,000 and various extras at $8,375, totalling $62,375. At the time the contract was executed the Harrises, appellees, accompanied by their real estate agent, J. Thomas Lutz, met with Wanda Cosgrove, a sales agent for Grempler Realty, the broker for the appellant. Mrs. Cosgrove called Walter Stefanowicz of The Stefanowicz Corporation to discuss an acceptable settlement date to put in the contract, and Mr. Stefanwicz indicated that June 30, 1972, "sounds all right." Thereafter, The Stefanowicz Corporation signed the contract.

On May 16, 1972, the Harrises' counsel, Marvin H. Schein, at the direction of the Harrises, directed a letter to The Stefanowicz Corporation, the full text was as follows:

> "This office represents Mr. and Mrs. Richard E. Harris with regard to your contract to building the dwelling on the above-captioned lot.
>
> "The contract calls for completion and settlement on or before June 30, 1972. The buyers have a mortgage commitment that expires August 22, 1972. Please note that we *must* have settlement *prior to* August 22, 1972.
>
> "Whereas Mr. Harris states you have not broken

ground yet, we request that since the deadline is rapidly approaching you begin construction without delay." (Emphasis in original letter).

Mr. Stefanowicz did not reply to the letter of May 16, because "it didn't call for a reply" and "because there was no need for any reply." He assumed that Mr. Schein had authority to extend the expected settlement date for his clients, and he understood the letter as extending the time for delivery of the house to August 22.

On July 7, 1972, Mr. Schein again wrote to The Stefanowicz Corporation, the full text of which follows:

"Whereas no response has been received to our letter of May 16, 1972 regarding the above-captioned property, and the expiration date for your performance has passed, please be advised that Mr. and Mrs. Richard E. Harris hereby cancel their contract and request refund of the $3,000.00 heretofore paid.

"Unless your refund of $3,000.00 is *received* within one week from the date of this letter we are instructed to institute prompt suit not only for the down-payment but also for damages resulting from your inability and failure to perform." (Emphasis in original letter).

As found by the trial judge, "Stefanowicz did not reply to the July 7, 1972, letter as he felt, under the terms of the contract, no response was necessary. He felt nothing was due to Harris, and stopped work. He instructed Mr. Lee of M.C.A. Company (Stenfanowicz's Company Engineers), to slow down."

On September 11, 1972, this suit was brought on the contract and the Harrises, appellees, prayed relief as follows:

"A. ORDER the Defendant to execute to the Plaintiffs a sufficient conveyance of a good and merchantable title of said property at and for the purchase of $15,000.00, adjusted by the $3,000.00

deposit being held by the Defendant with all proper guaranties and warranties, free of liens and encumbrances, all pursuant to the settlement apportionment terms stated in the contract.

"B. ORDER the Defendant to promptly restore the real estate to its condition at the time the contract was negotiated or pay, in the alternative, to the Plaintiffs the sum of $10,000.00 as damages or such sum as the Court may deem appropriate under the circumstances, said restoration to be completed within a reasonable time from the date of this Honorable Court's Order.

"C. ORDER the Defendant to pay unto the Plaintiffs such sum of money as would represent the damages suffered by the Plaintiffs in their loss of the benefits of their bargain.

"D. ORDER the Defendant to pay unto the Plaintiffs such other interest, costs and damages as are allowable by law.

"E. GRANT unto the Plaintiffs such other and further relief as the nature of their cause may require."

In an amended answer filed February 5, 1974, the appellants, The Stefanowicz Corporation, stated in part as follows:

"15. That further answering said Complaint, Defendant avers that:

"(a) Plaintiffs breached the contract between the parties when, on July 7, 1972, they communicated with Defendant through their authorized agent and attorney a demand for refund of their $3,000 deposit, which demand was not authorized by either the contract or by law. A copy of said demand letter is attached hereto and made a part hereof as Answer Exhibit No. 1;

"(b) Plaintiffs cancelled the subject contract by letter dated July 7, 1972, copy of which is

attached hereto and made a part hereof as Answer Exhibit No. 2; and

"(c) Notwithstanding said breach and cancellation, Defendant is presently constructing on the subject premises a Queen Anne dwelling house in substantial accordance with the provisions of the Contract of Sale between the parties on February 3, 1972 and Defendant stands ready, willing and able to convey said premises, upon completion, (approximately April 1, 1974) to the Plaintiffs at and for the contract price, with such adjustments therefrom as may be appropriate for minor variations from contract specifications."

In his opinion, the trial judge summarized the testimony and then addressed the issues presented by the parties as follows:

"1. TIME NOT OF THE ESSENCE.

"The Court finds from the clear, unequivocal wording of the contract that time was not of the essence. The cases quoted by the Plaintiffs are not apposite. Although, the June 30, 1972, completion date was discussed, it was never the intention of the parties to make that the day when performance was expected.

"2. DID STEFANOWICZ PROCEED WITH DILIGENCE AND GOOD FAITH TO DISCHARGE ITS CONTRACTUAL OBLIGATION?

"The Court believes that this is the key point in this case. After full and careful consideration of the testimony, the Court is convinced that Stefanowicz failed to act in good faith, failed to act with diligence, and failed to make any effort to discharge its contractual obligation to the Plaintiff. Despite the protestations of the Defendant, it is obvious that the Defendant knew the Plaintiff was insisting on completion and settlement before August 21,

1972, so that arrangements could be made for the children's schooling, and further, so that they would not lose their mortgage commitment. In spite of this, the Defendant ignored both the telephone calls of the Plaintiffs and letters from their attorney. The Defendant failed to request grading studies in proper time, failed to apply timely for permits and failed to make any effort to complete the home as it had contracted to do. In addition, the Court believes that the allegations made by Stefanowicz that the home could have been completed in 6 weeks, including the two week time necessary for the granting of the building permit, are unsubstantiated and unbelievable.

"3. THE DATE OF SETTLEMENT WAS EXTENDED UNTIL AUGUST 21, 1972.

"4. PLANTIFFS' LETTER OF JULY 7, 1972, CONSTITUTED AN ANTICIPATORY BREACH OF THE CONTRACT OF SALE.

"5. STEFANOWICZ WAS NOT GUILTY OF THE ANTICIPATORY BREACH OF THE CONTRACT ON JULY 7, 1972, BY REASONS OF HIS FAILURE TO PERFORM.

"The above issues raised by the Defendant are all related to the interpretation of the letter of Plaintiffs' counsel dated July 7, 1972, (Plaintiffs' Exhibit No. 6).[1]

"The Court has studied and restudied that exhibit. There can be no doubt that the Defendant's interpretation of the letter, i.e., that it automatically extended the settlement date, that it was an anticipatory breach, and that it was not necessary for the Defendant to respond thereto, is utterly and totally ridiculous. It is apparent from the letter, that its intent was to put the Defendant

---

1. It seems apparent the trial judge confused the two letters dated July 7, 1972 and May 16, 1972.

on notice that the Plaintiff needed the house completed by a date certain. The Plaintiff advised it would lose its mortgage commitment, and further, would have trouble placing its children in school in the area of the new home after that date. The Defendant, in its Memorandum, indicated that it treated the contract as cancelled. The uncontradicted evidence indicated to the contrary. The fact is, the Defendant chose to ignore the letter. The Defendant argues that because of the previous letter of May 16, 1972, (Plaintiffs' Exhibit No. 5), the Plaintiff was equitably estopped from complaining. This again, is an unreasonable interpretation of that exhibit. As pointed out by the Plaintiff in its Memorandum, the letter of July 7, 1972, could not have been evidence of an anticipatory breach as it was not considered as such by the Defendant. At best, the most favorable interpretation in favor of the Defendant's position that could be read into the July 7, 1972, letter would be that it was a conditional cancellation based upon the return of the $3,000.00 deposit. It is undisputed that the $3,000.00 deposit was not proffered to the Plaintiff until months after the suit was filed. The Court does not adopt that interpretation. The Defendant relies upon *Griffith vs. Schengrub*, 219 Md. 27 (1959), that the delay in construction was not caused by the Defendant, but because of difficulty of obtaining a grading permit from Baltimore County. They argue (page 4 of their Memorandum of January 8, 1976), that the existing administrative standards regarding minimum construction requirements are to be considered as much a part of a construction contract, as if they were expressly referred to and incorporated in the contract itself.

"The short answer to this point is that the delay was not because of the Plaintiffs' refusal to cooperate with Baltimore County, but because

Baltimore County refused to issue the grading permit. The delay was occasioned because Stefanowicz had proceeded to remove large amounts of dirt from the subject property and had materially altered its topography without prior county approval. The evidence is clear that when the grading permit was applied for, the building inspectors found work had already been done materially altering the grade, and therefore, required further topographical studies. The Defendant cannot complain that Baltimore County delayed in granting a permit when the delay was the clear responsibility of the Defendant.

"The Court, after carefully reviewing all of the testimony and exhibits, believes that although Stefanowicz was not guilty of an anticipatory breach of the contract on July 7, 1972, by reason of its failure to perform, that a reasonable time for the completion of the contract by the sellers would have been no later than August 21, 1972, and the house was not then completed (Plaintiffs' Issue No. 1)."

The first step in determining the contentions raised is to evaluate what effect the letter dated May 16, 1972, had on the date of settlement, June 30, 1972. As the trial judge properly found, time was not made of the essence either by the express terms of the contract or by the conduct of the parties. The accepted doctrine in the ordinary case of contract for the sale of land is that even though a certain date is stipulated as the date of settlement, unless time is made of the essence, this provision is formal rather than essential, and the parties are given a reasonable time within which to perform. *Chapman v. Thomas,* 211 Md. 102, 108, 126 A. 2d 579 (1956). While the date is relative and not to be interpreted literally, it does mean something. It cannot be totally disregarded. It is an approximation of what the parties consider a reasonable time under the circumstances of the sale, so the seller could not sit by, do nothing, and then claim an additional reasonable time to perform his side

of the agreement. *Doering v. Fields*, 187 Md. 484, 490, 50 A. 2d 553 (1947).

The words of the letter make it clear that the buyer was not insisting upon timely completion of the house by June 30, and this constitutes a waiver. *Kimm v. Andrews*, 270 Md. 601, 625, 313 A. 2d 466 (1974); *Evelyn v. Raven Realty, Inc.*, 215 Md. 467, 472, 138 A. 2d 898 (1958). It is equally clear that the appellees were attempting to establish August 22, 1972, as a firm date of settlement, which can be done, in the appropriate case, even without the use of the words "time is of the essence." *See Acme Building Co. v. Mitchell*, 129 Md. 406, 99 A. 545 (1916). The appellant materially changed his position in reliance upon this new date of settlement, whether it was firm or not; therefore, the appellees were estopped from asserting a date of settlement before August 22, 1972. *Kimm v. Andrews, supra* at 625, *Evelyn v. Raven Realty, Inc., supra* at 472 and *Doering v. Fields, supra.*

Having established that the appellant had until August 22, 1972, to construct the house for the Harrises, we must now determine whether the Harrises had the right to cancel on July 7, 1972, on the basis of an anticipatory repudiation.[2] The case of *String v. Steven Development Corporation*, 269 Md. 569, 307 A. 2d 713 (1973) is most persuasive on this point. In that case, the buyer of a residence to be constructed convinced himself that the new home would not be completed on schedule and had his attorney send a letter dated June 21, to the builder which said in part:

"'According to the contract, the seller is to complete improvements on the lot and make settlement before August 28, 1971, which is obviously impossible because to date, there is not even a building permit issued.

\* \* \*

"'Since it is impossible for your principal to comply with its contract to deliver the premises on or before August 28, 1971, we *demand refund of the*

2. The trial court found that The Stefanowicz Corporation had not committed an anticipatory breach as of that day. We agree with that finding.

*$1,000.00 deposit and declare the contract* of August 28, 1971 [sic] *breached and null and void.'* (emphasis added)." *Id.* at 571-572.

The Court cited Comment i of the Restatement of Contracts, § 318 (1932), which states:

" 'Though where affirmative action is promised, mere failure to act, at the time when action has been promised, is a breach, *failure to take preparatory action before the time when any performance is promised is not an anticipatory breach,* even though such failure makes it impossible that performance shall take place, and though the promisor at the time of the failure intends not to perform his promise.' " (emphasis added). *String, supra* at 579.

It also cited Illustration 11:

" 'A contracts with B in May, 1929, to have a specific vessel at B's wharf in New York on July 1, 1929, ready to load and carry a cargo for B. At the time when the contract is made, the vessel is in Charleston, South Carolina. After making the contract A determines not to perform it, though he does not so state, and permits the vessel to remain at Charleston until after July 1. *There is no breach until that day.'* (emphasis added)." *String, supra* at 579.

Under the facts of *String, supra,* and the instant case, a mere delay in preparing for construction, or in its commencement, unaccompanied by any other words or acts reflecting a repudiation of the contract, was insufficient to establish an anticipatory breach. *String, supra* at 580.

Although the trial court concluded that Stefanowicz had not committed a breach, one of its specific findings of fact was that the delay in obtaining a building permit was caused by the builder's removal of large amounts of dirt from the property without county approval (an affirmative act). It further found that Stefanowicz's claim that the home could have been completed in 6 weeks was unsubstantiated and

unbelievable. Obviously, these findings are in conflict with his conclusion. While the trial judge is not required to accept the testimony of witnesses, the record in this case is void of any other estimate of the length of time to complete the house. This is not a matter as to which judicial notice can be taken, and thus the burden was on the appellees to prove the impossibility of performance by August 22, 1972; therefore, we accept the trial judge's conclusion that the appellant, Stefanowicz, had not committed an anticipatory breach as of July 7, 1972.

We now look at the letter dated July 7, 1972. If it amounted to a cancellation of the contract, then the Harrises, appellees, committed an anticipatory breach, because there was no legal basis for them to cancel. The trial judge found that it was not a cancellation because it was conditioned upon the return of the $3,000.00 deposit and was not accepted as such by the appellant.[3] We find that the trial judge was clearly erroneous when he found that the cancellation was conditional on the refunding of the $3,000.00. The language of the letter is plain, certain, unambiguous, and susceptible to only one meaning. When the letter states that, "Mr. and Mrs. Richard E. Harris hereby cancel their contract," it can only mean that they positively and unconditionally repudiated the contract. *Weiss v. Sheet Metal Fabricators*, 206 Md. 195, 203, 110 A. 2d 671 (1955). The only condition expressed by the appellees was that if they did not receive the return of their deposit they would file suit. This, however, had no effect on the cancellation.

In regard to the trial judge's finding that the cancellation by the Harrises could not be an anticipatory repudiation because it was not treated as such, we also find him to be clearly erroneous. The appellees cite *Fast Bearing Co. v. Precision Development Co.,* 185 Md. 288, 309, 44 A. 2d 735

3. We note that when construing the language of a written document, as opposed to oral testimony, where the trial judge has the most advantageous opportunity to judge the credibility of the witnesses, we are still bound by the clearly erroneous rule, even though the document can be interpreted by this Court as well as the trial judge. *See,* however, Perlmutter v. Bacas, 219 Md. 406, 411, 149 A. 23 (1959) and Sewell v. Sewell, 218 Md. 63, 71, 145 A. 2d 422 (1958).

(1945) for the proposition that in order for there to be an effective anticipatory repudiation it must be accepted by the injured party. It is interesting to note that in that case the injured party wrote a letter expressly refusing to accept the cancellation. No such letter was written in the instant case. It is true that in that case the Court did recite the old rule as follows:

> "It has been generally held in this country that before a plaintiff can rely on an anticipatory breach in order to recover prospective damages, he must accept the repudiation of the contract as such. *Friedman v. Katzner*, 139 Md. 195, 114 A. 884; *Williston on Contracts*, Revised Edition, Vol. 5, page 3722 [1937]; *Hennessy v. Bacon*, 137 U. S. 78, 34 L. Ed. 605; *U. S. Potash Co. v. McNutt*, 70 F. 2d 126 and cases cited. That the plaintiff failed to do in this case." *Id.* at 309-310.

We examine some of the more important authorities cited in support of the rule. In *Friedman v. Katzner, supra,* although the Court mentioned the rule that an anticipatory breach must be accepted by the injured party, the case was decided on the basis that repudiation was equivocal in that the letter stated that the purchaser demanded either the house or a return of the deposit, and the rule that the anticipatory breach must be accepted by the injured party was mentioned but not discussed. In *Williston on Contracts*, § 1322 (Rev. ed. 1937), the rule was criticized and the adoption of the contrary rule of the Restatement was urged. Professor Williston stated:

> "Not only, moreover, do logic and the defendant suffer, but the very practical convenience which is the excuse for their suffering is not attained. A few illustrations from the cases will show that as at present applied the doctrine of anticipatory breach is so full of pitfalls for the unwary as to be objectionable rather than advantageous practically. In a leading English case it is stated: 'It would seem on principle that the declaration of such intention [not to carry out the contract] is not in itself and

unless acted on by the promisee a breach of contract. . . . Such declaration only becomes a wrongful act if the promisee elects to treat it as such. If he does so elect, it becomes a breach of contract, and he can recover upon it as such;' [1] and these words were quoted by Chief Justice Fuller of the Supreme Court of the United States.[2] The conception that a breach of contract is caused by something which the promisee does is so foreign to the notions not only of lawyers but of business men that it cannot fail to make trouble. A simpler mode of expression and one less open to this objection is adopted in the Restatement of Contracts. The repudiation is said to be a breach,[3] which is subject to nullification.[4] It is true that the American cases also commonly say that in order to make out a breach the injured party must 'elect' to treat the repudiation as such,[5] and under the English law this is important; [6] but, if it is held, as it generally is in the United States, that whether repudiation is treated as a breach or not, the injured party is not privileged to continue performance and recover damages based on such continued performance,[7] the only logical consequence of the difference of expression seems to be the effect on the Statute of Limitations.[8]"

1. Johnstone v. Milling, 16 Q.B.D. 460, 472, per Lord Bowen.
2. Roehm v. Horst, 178 U.S. 1, 20 S.Ct. 780, 44 L.Ed. 953. . . .
3. § 318.
4. Rest., Contracts, § 319.
5. Hettrick Mfg. Co. v. Waxahachie Mills, 1 F.(2d) 913 (C.C.A. 6); Dominey v. Johnson-Brown Co., 219 Ala. 666, 123 S. 52; Robinson v. Raquet, 1 Cal. App.(2d) 533, 36 P (2d) 821; Yaffe v. Glens Falls Indemnity Co., 115 Conn. 375, 161 A. 521; Darnell v. Toney, 45 Ga. App. 27, 162 S.E. 918; Dougherty v. Equitable L. Assur.Soc., 144 Misc. 363, 259 N.Y.S. 146, mod., but affd. on this point, 238 App. D. 696, 265 N.Y.S. 714, revd. on other grounds, 266 N.Y. 71, 193 N.E. 897; Zuck v. McClure, 98 Pa. 541. But see per Baker, J., in Lagerloef Trading Co. v. American Paper Prod. Co., 291 F. 947 (C.C.A. 7), cert. den. 263 U.S. 706.
6. See infra, § 1333.
7. See supra, § 1298.
8. See infra, § 2027; Rest., Contracts, § 322.

In the revised *Williston on Contracts*, (Jaeger ed. 1968) the criticism is continued and includes a further appeal for the

adoption of the Restatement rule. See §§ 1332 and 1334. In the more recent Maryland cases, *String v. Steven Development Corp., supra* and *C.W. Blomquist & Co. v. Capital Area Realty Investors,* 270 Md. 486, 311 A. 2d 787 (1973), the Court does not discuss the acceptance of the rejection by the injured party but indicates that in this area of the law the Court is now following the Restatement rules which do not require such acceptance.

While the trial judge stated that the uncontradicted evidence indicated that the appellant did not treat the contract as cancelled,[4] he also found that Stefanowicz upon receiving the letter, "felt nothing was due to Harris, and stopped work[;] [h]e instructed Mr. Lee, of M.C.A. Company, to slow down." This is sufficient to manifest his election to treat the letter as a repudiation. Even under the old rule requiring acceptance of election "it is, however, apparently not necessary to bring home to the repudiating party the election of the injured party." *Williston on Contracts,* § 1323 (Rev. ed. 1937).

The appellees base an argument on a letter dated November 9, 1972, which was not presented at the trial, although it was in the record of the prior proceedings. The letter was not reproduced in the record extract and we decline to consider that argument for both reasons. They also allege that the answer to the bill of complaint did not allege as a defense that the letter of July 7 cancelled the contract. We do not consider that to be of any importance because the case was tried on the basis of an amended answer which did refer to the letter of July 7, 1972 as a breach of contract. *See Shapiro v. Sherwood,* 254 Md. 235, 239, 254 A. 2d 357 (1969). Finally, the appellees argue that the chancellor quite properly rejected the testimony of Walter Stefanowicz, that he considered the letter of July 7, as the cancellation, in view of his subsequent inconsistent acts and pleadings and the continued negotiations between the parties. Our review of the record fails to disclose the inconsistent acts and pleadings. On the contrary, the record

---

4. Apparently the trial judge was of the opinion that acceptance of the cancellation must be communicated to the other party.

clearly shows that the continued negotiations between the parties were directed towards the settlement of a law suit and not a recognition of the contract. The appellant, Stefanowicz, must have recognized the cancellation of the contract, otherwise, there would have been no need for negotiations to settle the suit by entering into a new contract.

As the appellees, the Harrises' letter of July 7, 1972, under the circumstances of this case, constituted an anticipatory breach of contract, they are not entitled to recover damages. Clause 8 stated upon default or cancellation of the *buyer*, the buyer would forfeit his deposit and be liable for damages.[5] The trial judge found that this clause did not control because it had been mutually waived. We see no evidence in the record to support the proposition that this clause was waived, thus this finding is clearly erroneous. As the clause was not waived, the appellees are bound by the provision and can recover no damages. *See Hupp v. The George R. Rembold Building Company*, 279 Md. 597, 369 A. 2d 1048 (1977).

The chancellor found the seller, The Stefanowicz Corporation, has breached the contract, denied specific performance and awarded damages in lieu thereof. Stefanowicz has appealed from the award of damages and the appellees have appealed because the damages were insufficient. Under our view of the case, there is no need for us to discuss the remaining issues.

*Decree reversed.*
*Appellees to pay the costs.*

---

**5.** Clause 8 of the contract provided as follows:

"(8) Should Buyers cancel or default hereunder for any reason all monies paid by Buyers, including the cost of all change orders, will remain the property of the Seller and Seller shall be entitled to recover from Buyers all damages sustained as a consequence of such cancellation or default in excess of said monies. Should Seller cancel or default hereunder for any reason all monies paid by Buyers shall be returned by Seller, with no further liability on the part of one to the other."