# SIMKO, INC. ET AL. *v.* GRAYMAR COMPANY

[No. 1496, September Term, 1982.]

*Decided September 9, 1983.*

The cause was argued before WEANT and GETTY, JJ., and ALBERT T. BLACKWELL, JR., Associate Judge of the Seventh Judicial Circuit, specially assigned.

*William A. Snyder, Jr.* and *Kevin A. Dunne,* with whom were *Ober, Grimes & Shriver* on the brief, for appellants.

*Steven K. Fedder,* with whom were *Ann MacNeille* and *Weinberg & Green* on the brief, for appellee.

WEANT, J., delivered the opinion of the Court.

In 1971, Paul H. Smith, an employee of the Graymar Company, was asked, along with all other Graymar salesmen, to sign an agreement not to compete with Graymar should they ever leave its employ. Smith declined. Thereafter Smith was informed that he would be fired if he did not so agree. Because his wife was pregnant with their first child and he was facing embarrassment, he knuckled under and signed the agreement providing that he would not compete with Graymar for one full year within a "50 mile radius from the City of Baltimore."

During his employment with Graymar, Smith was compensated on a commission plus bonus basis. However, in 1980 Smith experienced difficulties in collecting his bonus. It was at that time that Smith decided to leave Graymar and set up his own business. He, along with Karl Knab, a Graymar service technician, formed Simko, Inc. In May of 1981 they met with Jack B. Miller, one of the owners of

Graymar, and informed him of their decision. Smith and Knab departed amicably from Graymar on 4 September 1981. In October of that year Graymar, relying on the non-competition agreement, demanded that Smith, Knab and Simko stop competing with Graymar. This the alleged competitors refused to do, resulting in a bill of Complaint being filed in the Circuit Court for Baltimore City by Graymar requesting injunctive relief and imposition of a constructive trust upon Simko's profits. The matter was initially heard by a general equity master whose findings were excepted to by Smith and Simko. Judge Joseph H. H. Kaplan denied the exceptions, adopted the Master's Report and Recommendations and issued an interlocutory order enjoining Smith and Simko from soliciting, negotiating, contracting, or attempting to engage in the sale or maintenance of business machinery or office equipment to certain Graymar customers. The determination of damages has been stayed pursuant to Rule 605 a pending this appeal by Simko and Paul H. Smith. The following issues have been raised:

1. Is an employer's mere continuation of the employment of an at-will employee insufficient consideration to support a post-employment covenant not to compete with the employer?

2. Did the lower court err in finding that [appellant] Paul H. Smith had not signed the covenant under duress?

3. Does the 1974 employment contract supersede the prior employment arrangement?

4. Did Graymar materially breach the employment agreement by failing to pay [appellant's] 1980 bonus, by failing to pay [appellant] a commission on a $130,000 sale, and by unilaterally canceling a benefit conferred upon [appellant] as part of his employment contract?

5. Did the Master err in failing to find that Graymar's actions in failing to alert [protest] during negotiations with Simko; Graymar's signing

of contracts with Simko; and, Jack Miller's explicit approval to Simko to submit a bid for business with a Graymar customer, constituted a waiver by Graymar of any rights under the covenant not to compete?

6. Are Smith and Simko free to bid on service contracts, where the agreement was drafted by Graymar and by its terms prohibits only sales of goods, wares, and merchandise?

1.

Heretofore, neither the Court of Appeals nor this Court has considered the precise question of whether continued employment of an at-will employee is sufficient consideration to support a covenant not to compete against his employer. The general rule in Maryland regarding the enforceability of restrictive covenants in employment contracts was stated in *Becker v. Bailey,* 268 Md. 93, 96, 299 A.2d 835 (1973):

> if . . . supported by adequate consideration and is ancillary to the employment contract, an employee's agreement not to compete with his employer will be upheld 'if the restraint is confined within limits which are no wider as to area and duration than are reasonably necessary for the protection of the business of the employer and do not impose undue hardship on the enployee or disregard the interests of the public.'

In *Dahl v. Brunswick Corporation,* 277 Md. 471, 356 A.2d 221 (1976), the employer initiated a policy of granting severance pay. An action was brought by twenty-one former employees to enforce this promise. The Court of Appeals held:

> . . . there is abundant support for the proposition that employer policy directives regarding aspects of the employment relation become contractual obli-

gations when, with knowledge of their existence, employees start or *continue to work* for the employer. [*Id.* at 476, emphasis added.]

The appellant makes the bald assertion that *Dahl* cannot and does not apply to the case *sub judice* for the reasons that: (1) employees as opposed to the employer were seeking to have the contract enforced, (2) the employee gave up nothing to receive a new benefit that the employer was bestowing upon all employees, (3) the instant case involves restraints of trade while the *Dahl* case does not.

The employees' continued service was determined to be consideration for the employer's promise of severance pay in *Dahl.* In the case at bar, the employer consented not to terminate the employment relationship in return for the employee's covenant not to compete. The employment at-will relationship is mutual in that, generally, either party may terminate the relationship at any time. Given the inherent mutuality, we see no basis for distinguishing the employee's consent to continue from the flip side of the coin — the employer's consent not to terminate.

Finally, appellant's third attempt at distinguishing *Dahl* confuses the necessity of consideration for the information of a contract with public policy concerns which may render the existing contract unenforceable. One who purchases the winning subscription to an illegal lottery is denied access to the courts to collect his winnings not because of the lack of contractual consideration but because the agreement violates public policy.

As noted by the trial judge, the viewpoint which holds that continuation of an at-will employee is not sufficient consideration for a covenant not to compete represents the distinct minority. *See, e.g., Maintenance Specialties, Inc. v. Gottus,* 455 Pa. 327, 314 A.2d 279 (1974); *Forrest Paschal Machinery Co. v. Milholen,* 27 N.C. App. 676, 220 S.E.2d 190 (1975); and *Morgan Lumber Sales Co. v. Toth,* 41 Ohio Misc. 17, 321 N.E.2d 907 (1974). The approach taken by these courts has been checkered. The most persuasive rationale for deeming the continuation of an at-will employee to be insuf-

ficient consideration was set forth in *Kadis v. Britt,* 224 N.C. 154, 29 S.E.2d 543, 548 (1944):

> A consideration cannot be constituted out of something that is given and taken in the same breath — of an employment which need not last longer than the ink is dry upon the signature of the employee, as where the performance of the promise is under the definite threat of discharge. Unemployment at a future time is disturbing — its immediacy is formidable. The choice may be expected.

The contrary or majority position holding that continued employment of an at-will employee does constitute sufficient consideration for a restrictive covenant has been adopted by at least eleven jurisdictions. *See Hogan v. Bergen Brunswig Corporation,* 153 N.J. Super. 37, 378 A.2d 1164 (App. Div. 1977) and cases cited therein. The court in *Hogan* held:

> The existence of sufficient consideration to support a post-employment restraint may be found in either the original contract of employment or in a post-employment contract, where the supporting consideration is at least, in part, the continuation of employment . . . .
>
> A verbalized threat of immediate discharge in the event the employee does not sign a proposed restrictive covenant is not necessary to constitute the consideration required to support a post-employment contract. Such a consequence can be inferred from conduct. Here the request for the restrictive covenant, . . . indicates that the employer was insisting upon its execution. The continuation of the plaintiff's employment for approximately three years after he signed the letter which acknowledges the covenant also provides consideration for the restrictive covenant. [378 A.2d at 1167.]

Generally, the courts in the majority position have found sufficient consideration for the restrictive covenant in either the agreement not to discharge or in the continued employment for a substantial period of time after execution of the restrictive covenant. In the instant case, the threat of discharge was the express and galvanizing force which prompted Smith's acquiescence. Also, Smith remained in Graymar's employ for a period of ten years after executing the restrictive covenant before he decided to leave and go into competition. Thus, both forms of consideration recognized by the majority courts were present in this case.

We think the way to handle the court's objection in *Kadis, supra,* is to look to the facts and circumstances of each case. Were an employer to discharge an employee without cause in an unconscionably short length of time after extracting the employee's signature to a restrictive covenant through a threat of discharge, there would be a failure of the consideration. An employer who bargains in bad faith would be unable to enforce the restrictive covenant. Rather than adopt a bright line but inequitable rule, we deem the better approach is to hold that the continuation of employment for a substantial period beyond the threat of discharge is sufficient consideration for a restrictive covenant. What constitutes a substantial period is dependent on the facts and circumstances of a particular case. Obviously, continuance of employment for a period of ten years imparts sufficient consideration.

Appellant implicitly concedes that had the restrictive covenant been bargained for at the commencement of employment there would be consideration for the agreement. A holding that, once employment had commenced, an agreement not to discharge was not sufficient consideration would lead employers to discharge an employee only to rehire that person on the subsequent day after the desired restrictive covenant had been executed. Besides the possible impact on employee seniority and vesting in various benefit packages, such an approach would merely exalt form over substance.

## 2.

Smith claims the restrictive covenant is unenforceable because it was induced by duress. In order to establish duress, there must be a wrongful act which deprives an individual of the exercise of his free will. *Eckstein v. Eckstein,* 38 Md. App. 506, 512, 379 A.2d 757 (1978). He argues the restrictive covenant is voidable on the authority of the *Restatement, Second, Contracts,* Illustration 11 in the Official Comments to § 176:

> A makes a threat to discharge B, his employee, unless B releases a claim that he has against A. The employment agreement is terminable at the will of either party, so that the discharge would not be a breach by A. B, having no reasonable alternative, releases his claim. A's threat is a breach of his duty of good faith and fair dealing, and the release is voidable by B.

We agree that under appropriate circumstances the threat of discharge to induce an employee to sign a restrictive covenant may constitute duress. However, whether a threat leaves the employee bereft of the qualify of mind essential to the making of a contract is a factual determination. The master had the opportunity to observe Mr. Smith's demeanor and made the following finding:

> [there was] such a give-and-take between employer and employee, in the course of extended arm's length negotiations, as to compel the finding that the defense of duress is a feeble one.

The cases cited by appellant are inapposite. In both *Shurtlett v. Giller,* 527 S.W.2d 214 (Tax. Civ. App. 1975) (signing of a note) and *Maemmar v. J. Walter Thompson Co.,* 435 F.2d 680 (7th Cir. 1970) (employees forced to resell company's stock), the acts required of the employee in order to save his job were unrelated to the employment relationship. The employer was exploiting that leverage which was available to achieve an illegitimate end. Not so

here. Graymar had a legitimate interest in protecting its trade secrets and customer information. If Smith refused to assent to the covenant not to compete, Graymar could only protect its proprietary information by making it unavailable to Smith. Were Smith denied access to such material, he could not effectively perform his duties. Termination of employment would be inevitable.

The synthesizing element in the *Restatement* Illustration and in the cases where duress had been found to exist is that the circumstances permitted no reasonable alternative. Smith had been designated Graymar's "Salesman of the Year." He admitted that similar jobs were available. Thus, it could hardly be said that, if Smith had been terminated by Graymar, he would have been deprived of his livelihood. The findings below are supported by credible evidence and thus are not clearly erroneous. Md. Rule 1086.

3.

Smith executed the 1971 agreement when he was a salesman compensated by commissions and bonuses. When promoted to sales manager in 1974, Jack Miller sent Smith a letter entitled "Working Arrangement" which set out the compensation to be paid Smith in his new capacity. Smith contends the 1974 sales manager agreement superseded the salesman employment agreement and that the restrictive covenant is no longer viable.

The trial court rejected this argument:

> The 1971 agreement provided that any modifications of the agreement must be in writing and signed by both parties. The 1974 agreement merely changed Mr. Smith's duties and compensation he received. No other provisions of the 1971 agreement were ever modified.

This Court has stated, "when construing the language of a written document, . . . we are still bound by the clearly erroneous rule . . . ." *The Stefanowicz Corporation v. Harris,*

36 Md. App. 136, 147, n.3, 373 A.2d 54 (1977). We have reviewed the letter signed only by Miller which provided that the "working arrangement [was] on a trial basis . . . and [could] be amended or changed at any time." The only detail of the new arrangement discussed was Smith's compensation formula. Judge Kaplan's findings regarding the 1974 letter are not clearly erroneous. Md. Rule 1086.

### 4.

Smith argues Graymar's failure to pay his 1980 commissions and bonuses were material breaches of the employment contract which relieved him of his obligation to honor the covenant not to compete. The master found "the evidence insufficient to support the contention that the covenants are void because Graymar breached the employment contracts by failing to pay bonuses and other promised compensation . . . ." He also found that "the alleged breach was not so material as to justify the court in concluding that the non-competition covenants were [un]enforceable."

We would be more inclined to accept this argument if the unpaid compensation had occurred closer in time to the execution of the covenant. The breach could then conceivably constitute a failure of consideration for the restrictive covenant. However, there has been no failure when the event occurs nine years after the agreement is signed. The *quid pro quo* for the restrictive covenant was Graymar's agreement not to discharge. Smith got the benefit of his bargain. The unpaid bonus did not relieve Smith of his obligation.

### 5.

In May of 1981, Smith and Knab met with Miller to advise him of their intent to form Simko. Over the next several months, the parties discussed several ways in which the two companies could coexist in a mutually beneficial relationship. Miller verbally gave Simko permission to bid

on a contract for a Graymar customer which Graymar did not intend to pursue. In fact, one contract for the sale of Olympia Electronic typewriters was executed. The issues of the non-competition agreement apparently never surfaced. Appellants contend such conduct precludes Graymar from enforcing the restrictive covenant under either a waiver or estoppel theory. Master Schneider had the opportunity to observe the demeanor of the witnesses. He found that the negotiations were

> evidence of the recognition by the parties to the non-competition covenant that they were valid and enforceable and that Graymar's consent to waive them was required as a condition precedent to the operation of the [appellant's] business.

Waiver involves the intentional relinquishment of a known right, or such conduct as warrants an inference of the relinquishment of such right, and may result from an express agreement or be inferred from circumstances, *Gould v. Transamerican Associates*, 224 Md. 285, 167 A.2d 905 (1961). Whether Graymar's negotiations flowed from the intent to forego enforceable rights is a factual determination whose resolution is better left to the tribunal with the opportunity to observe the witnesses. The permissive tone of the Olympia agreement is consistent with the master's findings that the negotiations recognized Graymar's right to enforce the restrictive covenant. The absence of waiver was not a clearly erroneous finding. This finding precludes any assertion that appellants detrimentally changed their position in reliance upon the conduct of Miller. Hence there has been no estoppel. *Gould v. Transamerican Associates, supra.*

6.

Appellants' final contention is that the restrictive covenant did not prohibit them from entering into service contracts. Under the terms of the covenant, Smith could not

"sell or deliver any goods, wares or merchandise of the kind or character sold by Graymar." Relying upon Webster's Third New International Dictionary of the English Language (1971), Judge Kaplan found "wares" included an "intangible item (such as a service) that is a marketable commodity."

Again, this issue involves the construction of a written document. We are bound by *The Stefanowicz Corporation v. Harris, supra,* to review the lower court's finding under the clearly erroneous rule. Smith sold maintenance contracts as a Graymar salesman. The obvious purpose behind the restrictive covenant was to prevent Smith, for a reasonable time only, from becoming a competitor of Graymar. The sale of maintenance or service contracts by Smith, especially to Graymar's customers, would be as hazardous to Graymar as the sale of business office equipment. The construction of "wares" supplied by Judge Kaplan is not clearly erroneous. Md. Rule 1086.

*Judgment affirmed.*
*Costs to be paid by appellants.*