SHIRLEY S. ABRAHAMSON, C.J.
¶ 61. {concurring). The instant case involves a dispute between an employer (Runzheimer International, Ltd.) and one of its former employees (David Friedlen) over the enforceability of a covenant not to compete. The question presented is whether a covenant not to compete be *129 tween an employer and an existing at-will employee is supported by consideration from the employer.[1]
¶ 62. When Friedlen signed the covenant not to compete, he had been working for Runzheimer as an at-will employee for over 15 years. Runzheimer did not promise to continue employing Friedlen if he signed the covenant. Rather, Runzheimer informed Friedlen that he would be fired if he chose not to sign the covenant.[2]
¶ 63. Friedlen signed the covenant not to compete. He was fired roughly two years later.
¶ 64. The majority opinion holds that Runzheimer provided consideration for Friedlen's signing the covenant not to compete. An internal contradiction, however, pervades the majority opinion and renders its holding ambiguous and troublesome.
¶ 65. On the one hand, the majority opinion concludes that Runzheimer promised not to "fire Friedlen at that time and for that reason." Runzheimer therefore "performed immediately," according to the majority opinion, "when it forbore its legal right to fire Friedlen at that time."[3] In other words, Runzheimer's forbearance from immediately firing Friedlen constituted consideration for Friedlen's signing the covenant not to compete.
¶ 66. On the other hand, the majority opinion determines that Runzheimer's right to fire Friedlen shortly after having him sign a covenant not to compete was only "theoretical."[4] If Friedlen had been fired *130 shortly after signing the covenant, then according to the majority opinion, Friedlen could have brought suit to prevent the covenant's enforcement. More specifically, the majority opinion holds that Friedlen would be protected by "contract formation principles such as fraudulent inducement or good faith and fair dealing, so that the restrictive covenant could not be enforced."[5]
¶ 67. As I see it, if Runzheimer promised to forbear only from immediately firing Friedlen, then the promise was illusory and cannot serve as consideration. Further, for the doctrines of fraudulent inducement and good faith and fair dealing to protect Friedlen from being fired shortly after signing the covenant not to compete, Runzheimer must have promised to do more than forbear from immediately firing Friedlen; it must have made an implicit promise not to fire Friedlen without cause for a reasonable period of time.
¶ 68. Thus, to hold that the covenant not to compete is supported by consideration from Runzheimer, and to hold that the doctrines of fraudulent inducement and good faith and fair dealing would protect Friedlen if he were fired shortly after signing the covenant not to compete, the majority opinion in effect transforms the parties' at-will employment contract into an employment contract for a reasonable duration. Understood this way, I agree with the majority opinion.
¶ 69. I write separately to explain my position.
I
¶ 70. I begin by examining the majority opinion's stated interpretation of the promise Runzheimer made in exchange for Friedlen's signing the covenant not to compete.
*131 | 71. According to the majority opinion, Runzheimer provided consideration for the covenant not to compete by promising not to "fire Friedlen at that time and for that reason."[6] In other words, the majority opinion interprets Runzheimer's promise as nothing more than a promise to forbear from immediately terminating Friedlen's at-will employment. The majority opinion concludes that this promise was not illusory.
¶ 72. As the majority opinion explains, a promise is illusory "when it is conditional on some fact or event that is wholly under the promisor's control and his [or her] bringing it about is left wholly to his [or her] own will and discretion . . . ."[7] The majority opinion refers in a footnote to the prototypical example of an illusory promise described in Corbin on Contracts, which is as follows: "X guarantees payment of P's note in return for C's written promise to forbear from suing P as long as C wishes to forbear."[8] Corbin on Contracts explains that "C's words may create the illusion of a promise, but in fact, C has made no promise."[9]
¶ 73. There is no meaningful distinction, in my opinion, between C's promise in Corbin's prototypical example and Runzheimer's promise to Friedlen, if all Runzheimer promised was to forbear from terminating Friedlen's at-will employment for as long as Runzheimer wished to forbear. C's forbearance was left *132 wholly to C's will and discretion. Runzheimer's forbearance from firing Friedlen was left wholly to Runzheimer's will and discretion. C promised to forbear for as long as C wished to forbear. Runzheimer promised to forbear from firing Friedlen for as long as Runzheimer wished to forbear.
¶ 74. Thus, if Runzheimer promised to forbear only from immediately firing Friedlen, then in my view Runzheimer's promise to Friedlen was illusory. Accordingly, under this interpretation of Runzheimer's promise, Runzheimer failed to provide consideration for Friedlen's signing the covenant not to compete.[10]
| 75. The majority opinion seems to recognize that the promise to forbear from immediately terminating an at-will employee is illusory. The majority opinion states that under its interpretation of Runzheimer's promise, Runzheimer "theoretically" could have fired Friedlen shortly after Friedlen signed the covenant not to compete.[11] The majority opinion contends, however, that if Runzheimer had fired Friedlen shortly after Friedlen signed the covenant not to compete, then Friedlen would "be protected by other contract formation principles such as fraudulent inducement or good faith and fair dealing, so that the restrictive covenant could not be enforced."[12]
¶ 76. I turn to an examination of these contract doctrines as they apply in the instant case.
*133 II
¶ 77. If Runzheimer promised only to forbear from immediately terminating Friedlen's at-will employment, then I fail to see how Friedlen could prevail on a claim of fraudulent inducement or breach of the covenant of good faith and fair dealing if he were fired shortly after signing the covenant not to compete.
¶ 78. I conclude that by invoking these contract doctrines, the majority opinion reinterprets Runzheimer's promise to Friedlen to be more than a promise to forbear from firing Friedlen for as long as Runzheimer wished to forbear. The majority opinion is in effect holding that Runzheimer implicitly promised not to terminate Friedlen's employment for a reasonable time. Unless Runzheimer's promise is so interpreted, the doctrines of fraudulent inducement and good faith and fair dealing are not applicable to the instant case.
¶ 79. A brief examination of the doctrines of fraudulent inducement and good faith and fair dealing will illustrate my point.
¶ 80. First, fraudulent inducement occurs when the "fraudulent behavior" of one party to a contract undermines the capacity of the other party to "make an informed decision."[13] A party engages in "fraudulent behavior" by knowingly or recklessly making a false statement when that statement is intended to defraud the other party and induce him or her to act upon it, and when the other party in fact believes the false statement and relies upon it to his or her detriment.[14]
*134 ¶ 81. Thus, to show that Runzheimer fraudulently induced Friedlen to sign the covenant not to compete, Friedlen would be required to demonstrate that Runzheimer made a false statement. If all Runzheimer promised was to forbear from terminating Friedlen's at-will employment at that time, what false statement did Runzheimer make? The answer seems to be none. After all, the whole point of at-will employment is that either party can terminate the employment relationship at any time.[15]
¶ 82. Second, the implied covenant of good faith and fair dealing reflects the "common disfavor for following the letter but not the spirit of an agreement."[16] "Every contract implies good faith and fair dealing between the parties . . . ."[17] The doctrine of good faith and fair dealing may not be invoked, however, "to undo express terms of an agreement."[18] In other words, when "a contracting party complains of acts of the other party which are specifically autho *135 rized, in their agreement," the court will not find "any breach of the covenant of good faith."[19]
¶ 83. Thus, to show that Runzheimer breached the implied covenant of good faith and fair dealing, Friedlen cannot complain of acts specifically authorized by his agreement with Runzheimer. If all Runzheimer promised was to forbear from immediately terminating Friedlen's at-will employment, on what basis could Friedlen assert a breach of the covenant of good faith and fair dealing had Runzheimer fired Friedlen shortly after he signed the covenant not to compete? The answer seems to be none. An at-will employment contract specifically authorizes the employer to fire the employee at any time and for any reason.
¶ 84. I conclude that Friedlen's claims of fraudulent inducement and good faith and fair dealing are doomed to failure if Runzheimer promised to forbear only from immediately firing Friedlen. In contrast, if Runzheimer is viewed as implicitly promising not to terminate its employment relationship with Friedlen for a reasonable time, then had Runzheimer fired Friedlen shortly after he signed the covenant not to compete, Friedlen would have had a viable claim of fraudulent inducement or breach of the covenant of good faith and fair dealing.
¶ 85. The majority opinion's reliance on the doctrines of fraudulent inducement and good faith and fair dealing therefore means that the majority opinion views Runzheimer as implicitly promising to refrain from firing Friedlen for a reasonable time after *136 Friedlen signed the covenant not to compete. This promise, unlike a promise of continued at-will employment, is not illusory.
* * * *
¶ 86. The majority opinion follows two contradictory paths: It states that Runzheimer promised to forbear from firing Friedlen immediately, but implies that Runzheimer promised to forbear from firing Friedlen for a reasonable time. It states that a promise to forbear from immediately firing Friedlen constitutes consideration for Friedlen's signing the covenant not to compete, but concludes that the covenant could not be enforced if Friedlen had been fired shortly after signing it.
¶ 87. Runzheimer did not fire Friedlen for two years after Friedlen signed the covenant. Runzheimer views the substantial period of Friedlen's employment following Friedlen's signing the covenant not to compete as supplying any consideration that may have been missing at the time Friedlen signed the covenant. The majority opinion seems to agree.
¶ 88. Cases are collected by the majority opinion and in the Reporters' Notes to Comments e. and f. to § 8.06 of the Restatement (Third) of Employment Law, Proposed Final Draft (2014). These cases are all over the map, but many states hold that a promise of continued indefinite employment is consideration for a restrictive covenant signed by an existing at-will employee. Some of these cases find consideration in an implied promise to forbear from firing the employee for a substantial time after the covenant is signed,[20] and *137 others find it in the fact of continued employment for a substantial time after the covenant is signed.[21]
¶ 89. Thus, cases from various jurisdictions support my view that the covenant not to compete at issue in the instant case was supported by consideration from Runzheimer if Runzheimer is viewed as having implicitly promised to forbear from firing Friedlen for a reasonable time. I understand the majority opinion as in effect holding just that: In exchange for Friedlen's signing the covenant not to compete, Runzheimer promised not to terminate Friedlen's employment for a reasonable time. I therefore agree with the majority opinion.
¶ 90. For the reasons set forth, I write separately.

 For a discussion of this question, see, e.g., 1 E. Allan Farnsworth, Farnsworth on Contracts § 2.10(b) (3d ed. 2004).

 Majority op., ¶ 2.

 Id., ¶ 46.

 Id., ¶¶ 5, 59.

 Id., ¶ 5.

 Id., ¶ 46.

 Majority op., ¶ 45 (internal quotation marks omitted) (quoting Metro. Ventures, LLC v. GEA Assocs., 2006 WI 71, ¶ 33, 291 Wis. 2d 393, 717 N.W.2d 58).

 Majority op., ¶ 45 n.9 (citing 1 Joseph M. Perillo, Corbin on Contracts § 1.17, at 47 (Rev. ed. 1993).

 Majority op., ¶ 45 n.9 (citing 1 Joseph M. Perillo, Corbin on Contracts § 1.17, at 47 (Rev ed. 1993).

 Devine v. Notter. 2008 WI App 87, ¶ 4, 312 Wis. 2d 521, 753 N.W.2d 557 ("If a party to a purported contract has, in fact, made only illusory promises and therefore not constrained him- or herself in any way, he or she has given no consideration and therefore no contract exists.").

 Majority op., f ¶ 5, 59.

 Id

 Digicorp, Inc. v. Ameritech Corp., 2003 WI 54, ¶ 48, 262 Wis. 2d 32, 662 N.W.2d 652 (quoting Huron Tool & Eng'g Co. v. Precision Consulting Serv., Inc., 532 N.W.2d 541, 545 (Mich. Ct. App. 1995)).

 Kaloti Enters., Inc. v. Kellogg Sales Co., 2005 WI 111, ¶ 12, 283 Wis. 2d 555, 699 N.W.2d 205. See also First Nat'l *134 Bank & Trust Co. v. Notte, 97 Wis. 2d 207, 223 n.7, 293 N.W.2d 530 (1980) (explaining that to void a contract on the basis of fraudulent inducement, the party seeking rescission must demonstrate that the other party to the contract intentionally misrepresented the facts "to induce a party to manifest his assent... " (quoting Restatement (Second) of Contracts, § 304(1) (Tent. Draft No. 11, 1976))).

 See Brockmeyer v. Dun & Bradstreet, 113 Wis. 2d 561, 567, 335 N.W.2d 834 (1983); see also id. at 579 (Day, J„ concurring) (" 'At will' contracts are employment contracts that. . . have no time duration and may be terminated at will by the employer or employee at any time 'for any reason or for no reason'" (emphasis added).).

 Beidel v. Sideline Software, Inc., 2013 WI 56, ¶ 27, 348 Wis. 2d 360, 842 N.W.2d 240.

 Id, ¶ 27.

 Id., ¶ 29.

 Super Valu Stores, Inc. v. D-Mart Food Stores, Inc., 146 Wis. 2d 568, 577, 431 N.W.2d 721 (Ct. App. 1988) (emphasis added).

 See, e.g., Crowell v. Woodruff, 245 S.W.2d 447, 449-50 (Ky. Ct. App. 1951) (holding that a non-compete agreement *137 entered into by an existing employee was "dubious" for "lack of mutuality," and that "[t]here must be read into the contract an implied obligation to retain [the employee for] such period of time as would deserve the right to enforce the [non-compete agreement]").

 See, e.g., Simko, Inc. v. Graymar Co., 464 A.2d 1104, 1107-08 (Md. App. 1983) ("[T]he continuation of employment for a substantial period beyond the threat of discharge is sufficient consideration for a restrictive covenant.").